IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HRPT PROPERTIES TRUST, et al., | ) ) ) | CIV. NO. 09-00375 SOM/KSC |
| Plaintiff, | ) ) | ORDER DENYING PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR |
| vs. | ) ) | SUMMARY JUDGMENT |
| LINDA LINGLE, in her official capacity as the Governor of the State of Hawaii; CITIZENS FOR FAIR VALUATION, Intervenor-Defendant, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER DENYING PLAINTIFF'S AND
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

        This court is asked to decide whether a 2009 Hawaii law

defining a term in existing commercial and industrial leases is

constitutional.  Plaintiff HRPT Properties Trust, together with

its affiliates, owns commercial properties in Hawaii that it

leases pursuant to long-term leases that require appraisers to

set "fair and reasonable" annual rent if the parties fail to

agree on rent.  HRPT challenges the new law, which purports to

define that lease term, as violative of the United States

Constitution both facially and as applied.  HRPT moves for

summary judgment.  Defendant Linda Lingle (the Governor of

Hawaii) and Intervenor Citizens For Fair Valuation counter-move

for summary judgment.

Before this court can address the merits of the constitutional challenges to the law, this court must determine whether HRPT has standing to bring its challenges.  Standing in this action is inextricably intertwined with the merits of the case, and neither standing nor the merits can be determined on the present motion.  The court therefore denies the pending motions and leaves all issues for future proceedings, either by way of motions on fuller records or at trial.

II.      BACKGROUND.

HRPT is a Maryland real estate investment trust with its headquarters near Boston.  Lepore Decl. ¶ 3, attached to Pl.'s Concise Statement.  In 2003, HRPT bought commercial and industrial land in the Mapunapuna and Kalihi Kai area on Oahu from the Estate of Samuel Damon.  Id. ¶ 5.  The land was subject to business leases averaging fifty years.  Id.

These leases provide for an initial period of fixed rent, followed by rents to be negotiated and reset for subsequent periods.  Ex. 1, attached to Pl.'s Mem. Opp. Mot. Summ. J. ("Pl.'s Opposition"), Doc. No. 49 (Nov. 25, 2009).  The annual rent "shall be determined for each of said periods by mutual agreement of the Lessors and Lessee or, if they fail to reach such agreement at least 90 days before the commencement of such period, by appraisal."  Id. at 2.  The appraisal is to be

conducted by three impartial real estate appraisers charged with determining a "fair and reasonable annual rent for the demised land (exclusive of buildings)." Id. at 12-13.

In 2006 or 2008, a number of HRPT's lessees formed an entity called the Citizens for Fair Valuation ("CFV"). CFV Motion to Intervene, Doc. No. 19-1 at 2, 11 (Sept. 29, 2009); Steiner Decl. ¶ 3, attached to CFV Motion. CFV's stated purpose is to obtain fair rents of properties subject to long-term leases. Id. In 2008, shortly before many HRPT leases were scheduled for rent renegotiation, CFV advocated new legislation listing factors that appraisers would have to take into account when setting rent in certain long-term leases. Id. at 4.

In 2009, the Hawaii Legislature passed Act 189. Act 189 purports to protect small businesses by clarifying "vague or onerous" provisions in existing commercial and industrial leases. Act of July 15, 2009, ch. 519, 2009 Haw. Laws Act 189, Haw. Rev. Stat. § 519-Section 1. In passing Act 189, the Legislature noted that small businesses strengthen and diversify the economy by providing important services and products to local communities, but that many do not own urban land, instead leasing property under long-term leases. Id. The Legislature expressed concern that, while urban businesses have helped to stabilize the economy, "vague or onerous" lease terms could force small urban businesses to relocate to rural areas. Id. The Legislature

3

identified the maintaining of close ties between small businesses and the communities they serve as a "public purpose that requires legislative support." Id.

Act 189, titled "Leases of commercial and industrial property," went into effect without Governor Lingle's signature. Id. Lingle stated at the time that Act 189 targeted a single landowner, HRPT, and that the "actions of a single land owner" had caused the Legislature to "intervene[] between the parties." Ex. 24, attached to Pl.'s Concise Statement.

The Act focuses on the term "fair and reasonable" in connection with rent renegotiations for certain "commercial or industrial" properties. Haw. Rev. Stat. § 519-(a). Act 189 applies only to property zoned for commercial or industrial use that is subject to a lease of at least ten years, has an unexpired term of at least five years, and is owned by a lessor with at least 50,000 square feet of industrial or commercial property in Hawaii. Haw. Rev. Stat. § 519-(b). No party has identified any lessor other than HRPT that is subject to Act 189.

Under Act 189, "fair and reasonable" rent is rent that is fair and reasonable to both the lessor and lessee. Haw. Rev. Stat. § 519-(a)(1)(A). Any appraiser determining "fair and reasonable" rent must consider "any and all relevant attendant circumstances," including the "use and intensity of the leased property during the term of the lease approved by the lessor,"

4

and the "surface and subsurface characteristics of the leased property and the surrounding neighborhood on the renegotiation date." Haw. Rev. Stat. § 519-(a)(1)(B). Act 189 states that it "does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before its effective date." Haw. Rev. Stat. § 510-Section 3.

The law is in effect for only the single year between July 1, 2009, and June 30, 2010, and therefore does not affect any lease scheduled for renegotiation after June 30, 2010. Many of HRPT's leases are subject to rent renegotiation during the year the Act is in effect. HRPT is currently in two appraisal proceedings to determine rent. Lepore Third Decl. ¶ 4, attached to Pl.'s Opposition.

Act 189 did not pass without considerable debate. A number of HRPT's lessees testified that Act 189 was important to ensure that the rent renegotiation process was fair and equitable. Exs. 4 and 13, attached to Pl.'s Concise Statement. The Hawaii Attorney General, however, testified that the Act was unconstitutional, the opposite of the position Governor Lingle now takes. See Exs. 16, 17, 20, 21, attached to Pl.'s Concise Statement.

On August 14, 2009, a little more than a month after the Act took effect, HRPT filed the present action. HRPT alleges that Act 189 violates the Contracts Clause, Equal Protection

Clause, Due Process Clause, Commerce Clause, and Takings Clause of the United States Constitution, by requiring appraisers to consider matters not set forth in the leases.  HRPT also alleges that this Act is a bill of attainder and an ex post facto law.  HRPT seeks a declaration that Act 189 is unconstitutional and an injunction preventing its enforcement.  Compl. ¶ 1.

III.     STANDARD OF REVIEW.

        Lingle and CFV take the position not just that Act 189 is constitutional, but also that HRPT lacks standing to bring its challenges.  Lingle and CFV contend that HRPT has suffered no injury, and that HRPT is only speculating that ongoing renegotiation appraisals subject to Act 189 will result in lower rents than would otherwise be the case.

        Standing under Article III of the United States Constitution is a constitutional limitation on a court's subject matter jurisdiction.  Standing involves the question of whether the litigant is entitled to have the court decide the merits of a dispute.  A suit brought by a plaintiff who lacks standing is not a "case or controversy," and a federal court therefore lacks subject matter jurisdiction over the suit.  Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004).  Although Lingle and CFV have moved for summary judgment on the issue of standing, jurisdictional issues are more appropriately addressed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  See Lockheed

6

<u>Martin Corp. v. United States,</u> 50 Fed. Cl. 550, 552 (Fed. Cl. 2001) (treating a motion for summary judgment as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction because a Rule 56 motion is inappropriate for challenging a court's subject matter jurisdiction).

A challenge under Rule 12(b)(1) can be either a facial or a factual attack on jurisdiction. A facial attack asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction. A factual attack disputes the truth of the allegations that would otherwise confer federal jurisdiction. <u>Save Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). When standing is factually attacked in a Rule 12(b)(1) motion, the court may hear evidence before ruling on the issue. <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 200-202 (9th Cir. 1989). Few procedural limitations exist in a factual challenge to a complaint's jurisdictional allegations. <u>Id.</u> The court may permit discovery before allowing the plaintiff to demonstrate the requisite jurisdictional facts. <u>Id.</u>

To the extent Lingle and CFV challenge HRPT's standing, the court construes their motions as brought under Rule 12(b)(1). <u>See</u> <u>Crawford v. United States</u>, 796 F.2d 924, 928 (7th Cir. 1986) ("If the defendant thinks the court lacks jurisdiction, his proper course is to request an evidentiary hearing on the issue."). Usually, this court may not address the merits of the

7

remaining issues without first determining the jurisdictional
issue.  See id.; see also Dixon v. Wallowa County, 336 F.3d 1013,
1020 n.1 (9th Cir. 2003) (noting that "to avoid needlessly
reaching constitutional issues, the Supreme Court consistently
instructs [the court] not to assume jurisdiction to dispose of
the case on easier grounds").  A court may hear evidence and make
findings of fact necessary to rule on the subject matter
jurisdiction question prior to trial, if the jurisdictional facts
are separable from the merits.  Rosales v. United States, 824
F.2d 799, 802-803 (9th Cir. 1987).  However, if the
jurisdictional issue and substantive claims are so intertwined
that resolution of the jurisdictional question is dependent on
factual issues going to the merits, the court should dismiss for
lack of jurisdiction only if the material facts are not in
dispute and the moving party is entitled to prevail as a matter
of law.  Otherwise, the intertwined facts must be resolved by the
trier of fact.  Id.

          To establish standing, a plaintiff must demonstrate (1)
an actual or threatened injury that (2) is fairly traceable to
the challenged action such that (3) it is likely to be redressed
by a favorable decision.  Lujan v. Defenders of Wildlife, 504
U.S. 555, 560 (1992).  Standing "is determined as of the date of
the filing of the complaint. . . .  The party invoking the
jurisdiction of the court cannot rely on events that unfolded

after the filing of the complaint to establish its standing."
Wilbur v. Locke, 423 F.3d 1101, 1107 (9th Cir. 2005) (internal
quotations omitted).

Although the burden of establishing standing lies with
the party asserting federal jurisdiction, the manner and degree
of evidence necessary to meet this burden varies depending on the
stage of litigation.  Lujan, 504 U.S. at 561.  At the pleading
stage, "general factual allegations of injury resulting from the
defendant's conduct may suffice."  Id.  (internal citations and
quotations omitted).  After the pleading stage, the burden on a
plaintiff increases.  The present motions challenging standing
come at the outset of the case, when no discovery has been taken.

In treating the present jurisdictional issue as falling
under Rule 12(b)(1), it is not this court's intent to change the
burden on HRPT.  Rather, the court is concerned that Lingle and
CFV not change HRPT's burden simply by styling their challenges
to standing as summary judgment motions.  On a Rule 12(b)(1)
motion, this court may announce procedures to be followed in
addressing the standing issue.  See Alliance for Envtl. Renewal,
Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 (2d Cir. 2006)
(noting possible methods of resolving standing challenged under
Rule 12(b)(1)).  The court may, for example, allow limited
discovery on the jurisdictional issue, then resolve the matter
based on a motion, or, if there is a genuine issue of fact, the

court may conduct a hearing.   <u>Id.</u>

Lingle and CFV seek to conflate the pleading stage and the summary judgment stage.  This is particularly problematic here, with a plaintiff that may not be in ready possession of evidence establishing standing.  If, for example, HRPT's injury is a legislative change in lease terms from what the original contracting parties intended, HRPT, which was not an original contracting party, may need discovery to establish that original intent.

This court recognizes, of course, that summary judgment motions are by no means barred before discovery commences, and that numerous other cases address standing issues in the context of summary judgment motions.  The famous <u>Lujan</u> case, for example, discussed standing in the context of summary judgment motions that do not appear to have been preceded by much discovery.  But three circumstances distinguish the summary judgment motions in <u>Lujan</u> from the summary judgment motions before the court.

First, the summary judgment motions in <u>Lujan</u> were preceded by a Rule 12(b)(1) motion to dismiss for lack of standing.  The district court granted the motion to dismiss but was reversed by the Eighth Circuit.  Summary judgment motions followed only on remand.  By contrast, Lingle and CFV leap immediately to the Rule 56 process.

Second, the groups challenging the legality of the

10

regulation in issue in Lujan were identifying the injury as a thwarting of their intent.  Unlike HRPT, the groups in Lujan had ready access to evidence of the intent in issue.  Any injury HRPT has sustained, by contrast, stems from the intent of HRPT's successor many years ago, a matter that HRPT, unlike the groups in Lujan, possibly has access to only through discovery.

Third, as the Supreme Court noted in Lujan, the nature and extent of facts that must be averred or proven to establish standing "depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." 504 U.S. at 561.  If, as with HRPT, a plaintiff is the object of a law, "there is ordinarily no question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."  Id. at 561-62.  "When however, as in [Lujan], a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed."  Id. at 562. In other words, a much greater showing of standing was required in Lujan than is required here, and it may be in that context that Rule 56 appropriately applied in Lujan.

The showing that HRPT has made so far consists of identifying lease language that it interprets as distinguishable from Act 189's interpretation.  This is enough of a showing to avoid being thrown out of court at this point, but not enough to

11

prevail on the merits.  A plaintiff must make a "factual showing of perceptible harm" by putting forth specific evidentiary facts to make a sufficient showing of injury.  <u>Carroll v. Nakatani</u>, 188 F. Supp. 2d 1233, 1236 (9th Cir. 2002) (internal quotations omitted); <u>see also</u> <u>Deck v. Am. Hawaii Cruises, Inc.</u>, 121 F. Supp. 2d 1292, 1299 (D. Haw. 2000) (internal quotations omitted).  Even on a summary judgment motion, a plaintiff need not establish standing in fact; a plaintiff need only demonstrate that there is a genuine question of material fact as to the standing elements. <u>Truth v. Kent. Sch. Dist.</u>, 542 F.3d 634, 642 (9th Cir. 2008); <u>Cent. Delta Water Agency</u>, 306 F.3d at 947.  At the motion stage, "factual allegations in support of standing are taken as true." <u>Alaska Wildlife Alliance v. Jensen</u>, 108 F.3d 1065, 1068 (9th Cir. 1997) (internal citations omitted).

     Lingle and CFV also argue that this case is not ripe for adjudication.  The constitutional component of ripeness--that there be an Article III "case or controversy"--requires a concrete impact on the parties arising from the dispute.  <u>Buono v. Kempthorne</u>, 527 F.3d 758, 774 (9th Cir. 2008) (internal quotations omitted).  In the present case, this analysis is almost identical to the injury-in-fact inquiry under the standing doctrine.  Constitutional ripeness can be characterized as "standing on a timeline." <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1122 (9th Cir. 2009) (internal quotations omitted).  "The

constitutional ripeness of a declaratory judgment action depends upon whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." In re Coleman, 560 F.3d 1000, 1005 (9th Cir. 2009) (internal citations omitted). Whether the case is ripe for adjudication raises the same issue as whether HRPT has an injury that gives rise to standing.

IV.     ANALYSIS.

        In their motions, the parties characterize HRPT's alleged injury as consisting of direct financial losses.  HRPT says that, in light of Act 189, its lessees have demanded "during rent reset negotiations" that the rent resets be based on their individual circumstances.  Pl.'s Mem. at 12, Lepore Decl. ¶ 21, attached to Pl.'s Concise Statement ("lessees have demanded and may demand during . . . the appraisal process that rent resets be based on their unique individual circumstances," which has "impeded the rent reset process [and resulted in] more resets being subject to appraisal").  HRPT claims that lessees' expectations that, under Act 189, appraisers will set lower rents has led lessees to desire the appraisal process instead of trying to negotiate rents with HRPT directly.  Id.  HRPT also notes that the appraisal process itself is expensive, regardless of the appraisal outcome.

13

Lingle and CFV respond that HRPT has no evidence that lessees are forcing HRPT into the appraisal process because of Act 189 or that appraisers will set lower rents because of Act 189.  It appears to this court that Lingle and CFV are treating HRPT's burden to establish standing as a requirement that HRPT prove all elements of its case.  Whether the jurisdictional issue and the merits are entirely congruent is not a matter this court must now determine.  What is clear, though, is that the issues are intertwined.

In the parties' varied iterations of what a showing of injury requires, the central dispute is whether the Act materially changed HRPT's legitimate expectations.  In other words, whether HRPT has been injured turns on whether the Act materially changes or destroys the intentions of the parties that formed the contract regarding the rent negotiation and appraisal process.  If the contracting parties intended that appraisers consider the factors set forth in the Act, then HRPT is not harmed by this Act.  Act 189 then does nothing to alter the parties' contractual obligations and expectations.  However, if the parties did not intend that the appraisers be required to consider factors set forth in the Act when determining fair and reasonable rent, then this Act changes the expectations of the parties by requiring the appraisers to consider new matters.  HRPT would then be injured for purposes of standing.

14

Whether the bargain has been changed is also the crux of the merits of the case.  For example, whether the Act violates the Contracts Clause depends on whether the Act changes the expectations of the contracting parties.  The threshold inquiry of Contracts Clause analysis is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship."  RUI One Corp. v. City of Berkeley, 371 F.3d 1137, 1147 (9th Cir. 2004).  Total "destruction of contractual expectations is not necessary for a finding of substantial impairment."  Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411 (1983).  "[S]tate regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment."  Id.  As both the standing inquiry and the merits require evidence of intent, standing and the merits are inextricably intertwined.  To unravel both issues, the court must examine the expectations of the original contracting parties.

The question before this court is whether, as HRPT claims, Act 189 changes the parties' original intent with respect to "fair and reasonable" rent, or whether, as Lingle and CFV assert, Act 189 only reinforces the parties' intent.  While the parties all contend that there is no genuine issue of material fact, this court finds nothing in the record establishing the original contracting parties' intent.  That intent is by no means

15

clear from the leases themselves.  When the contract is unclear, and there is some doubt as to the intent of the parties, that intent is a question of fact.  See Found. Int'l, Inc. v. E.T. Ige Const., 102 Haw. 487, 497, 78 P.3d 23, 33 (2003).

In examining the intent, this court looks to the intent of Damon Estate, the party that formed the contract, not HRPT. HRPT thus does not establish the intent critical to this court's inquiry in saying, "HRPT has honored its contractual obligation to accept the existing below market rates on its Lease Contracts, but it has done so in the reasonable expectation that it would have the contractual right to change market rents on the reset dates."  Lepore Decl. ¶ 9.

HRPT appears to be trying to solve this problem by submitting testimony about how this court should read the leases. HRPT submits a declaration of David Lepore, saying, "Before this Act, the Lease Contracts did not permit appraisers to take into account an individual lessee's unique business, financial, or other circumstances."  Lepore Decl. ¶ 14.  Lepore also says that, before the "enactment of Act 189, the Lease Contracts required appraisers to apply accepted real estate industry practices to determine the 'fair and reasonable annual rent' . . . by calculating a commercially reasonable return on the fair market value of the land."  Lepore Decl. ¶ 13.  Such testimony is not helpful to this court, as it purports to restate lease terms, not

16

to provide actual evidence.  That is, Lepore is attempting to state law, not fact.  And the purported law does not flow ineluctably from the text of the words.  The lease contracts do not, for example, expressly require the appraisers to apply real estate industry practices; the lease contracts only say that three impartial real estate appraisers must establish the fair and reasonable rent if the parties cannot agree.  Ex. 1 at 13, attached to Pl.'s Opposition.

CFV is similarly unhelpful to this court.  Arguing that the Act only reconfirms the historical understandings of the parties regarding how fair and reasonable rent was to be established, CFV presents no evidence of any such understanding. CFV attaches letters that Damon Estate sent to the lessees regarding rent negotiations.  Exs. B-J, attached to CFV's Concise Statement; Exs. P-R, attached to CFV Reply.  However, these exhibits do not establish, demonstrate, or even shed light on what the original parties intended with respect to how appraisers would determine the "fair and reasonable" rent if the parties could not agree.  At most, the letters show how Damon Estate communicated with the parties in negotiations outside of the appraisal process.  It is evidence of the intent or expectations of the original parties as to what the appraisers would do that is relevant to the existence or nonexistence of injury.

Nor is this court prepared, on the present record, to

17

accept CFV's argument that, to show injury, HRPT must offer evidence of a rent renegotiation or arbitration governed by Act 189 that has yielded a rental rate lower than would have been set absent Act 189.   CFV's argument requires HRPT to complete the expensive appraisal process first, then to challenge the rent, presumably through deposing the appraisers who set the post-Act 189 rent, and/or through testimony by other experts.   But it may be that any material rewriting of the lease is an injury even before an actual appraisal.   The injury might conceivably arise from the Legislature's substitution of its own judgment for the original parties' bargain.

Suppose, for instance, that the Legislature passed a law stating that the "fair and reasonable" rent set by the appraisers in negotiations for periods beginning in or after 2012 could never exceed the rent charged in the previous rental period.   Under CFV's reasoning, HRPT could not challenge the law until completing the 2012 appraisal process and establishing that the 2012 rent would have been higher than the previous rent.   It is not at all clear to this court why such an obvious change in the bargain would not itself be an injury.   Instead, it may be that injury exists if the parties' contractual expectations are changed or destroyed.

In any event, the authority CFV cites is not persuasive.   In <u>Guggenheim v. City of Goleta</u>, 582 F.3d 996,

1004-05 (9th Cir. 2009), the court held that the causation and redressability elements of standing were satisfied when the plaintiffs submitted an analysis of the effect of an ordinance that demonstrated that the ordinance reduced rents and thus reduced the amount the plaintiffs would collect each year.  <u>Id.</u> However, that case by no means stands for the proposition that CFV argues it stands for: that a plaintiff must submit a detailed analysis showing a reduction in rent to establish injury.  That case did not address the injury requirement and does not require, as a bar or threshold for alleging injury, an analysis demonstrating injury.

Put another way, this court does not presently adopt the parties' assumption that, for standing purposes, a dollar loss is the only possible injury.  It is the dispute over whether Act 189 has caused a dollar loss that defines the parties' differing views on standing.  But the destruction or disappointment of contractual expectations may well be an injury in itself.  Because no party has briefed the issue, the court declines to reach the merits and denies all parties' motions for summary judgment.  The court awaits further discovery and briefing as to the intent of the contracting parties.

V.          CONCLUSION.

          For the foregoing reasons, the court denies all parties' motions for summary judgment.  The parties are directed to discuss among themselves a discovery schedule or, if unable to reach agreement, to meet promptly with the Magistrate Judge to discuss the schedule.


          IT IS SO ORDERED.

          DATED: Honolulu, Hawaii December 22, 2009



          /s/ Susan Oki Mollway

          Susan Oki Mollway
          Chief United States District Judge



HROT Properties Trust, et al., v. Lingle, et al., 09cv375 SOM/KSC; ORDER DENYING PLAINTIFF'S AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.