IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HRPT PROPERTIES TRUST and affiliated companies; MASTERS PROPERTIES LLC, a Maryland limited liability company; ORVILLE PROPERTIES LLC, a Maryland limited liability company; ROBIN 1 PROPERTIES, a Maryland limited liability company; TANAKA PROPERTIES, LLC, a Maryland limited liability company; LTMAC PROPERTIES, LLC, a Maryland limited liability company; and Z&A PROPERTIES LLC, a Maryland limited liability company, | CIVIL NO. 09-00375 SOM-KSC<br><br>FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES |
| Plaintiffs, | |
| vs. | |
| LINDA LINGLE, in her official capacity as Governor of the State of Hawaii, | |
| Defendant, | |
| and | |
| CITIZENS FOR FAIR VALUATION, | |
| Intervenor-Defendant. | |

FINDINGS AND RECOMMENDATION TO DENY
<u>PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES</u>

Before the Court is Plaintiffs' Motion for Attorneys' Fees and Expenses ("Motion"), filed November 1, 2010.  On November 12, 2010, Plaintiffs filed their Statement of Consultation ("SOC").  Intervenor-Defendant Citizens for Fair Valuation ("CFV") filed its Opposition on November 24, 2010.  On December 8, 2010, Plaintiffs filed their Reply.

Pursuant to Rule 7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules"), the Court finds this matter suitable for disposition without a hearing. After reviewing the parties' submissions, the Court FINDS and RECOMMENDS that the Motion be DENIED.

<u>BACKGROUND</u>

As the parties and the Court are familiar with the history of this case, the Court limits the background to those facts bearing relevance to the instant Motion.

2

On September 29, 2009, CFV filed a motion to intervene.[1]  On October 21, 2009, the Court issued an Order Granting CFV's Motion to Intervene.

On May 31, 2010, Chief Judge Susan Oki Mollway issued an Order Granting Plaintiffs' Motion for Summary Judgment, Denying Defendant Linda Lingle's Second Counter Motion for Summary Judgment, and Denying Intervenor-Defendant Citizens for Fair Valuation's Counter Motion for Summary Judgment ("SJ Order").  On June 1, 2010, the Court entered Judgment in favor of Plaintiffs and against Defendant Lingle and CFV, pursuant to the SJ Order.

On June 3, 2010, Plaintiffs filed a Consent Motion to Extend Time for Filing Motion for an Award of Attorneys' Fees ("Consent Motion"), wherein Plaintiffs, with the support of Defendant and CFV, requested that the Court extend the time to file a motion for attorneys' fees and related expenses until fourteen

---

[1]  Plaintiffs vigorously opposed CFV's intervention on the basis that CFV lacked standing to intervene under Rule 24 of the Federal Rules of Civil Procedure.

days after the latter of 1) the expiration of time for defendants to file a notice of appeal without an appeal being noticed or 2) the issuance of a final mandate following any appeal with the time for further appeal, if any, having passed without an appeal having been taken.  That same day, this Court issued an Order Extending Time for Filing Motion for an Award of Attorneys' Fees ("Extension Order"), which granted the foregoing request.

On June 30, 2010, Defendant Lingle filed a Notice of Appeal.

On September 29, 2010, Plaintiffs and Defendant Lingle reached a settlement agreement.  As part of the agreement, Plaintiffs agreed not to seek attorneys' fees or costs incurred in this lawsuit from Defendant Lingle, the State, State entities, or other State agents, officers or employees.  Mot., Ex. 1 at ¶ 11.

On October 18, 2010, the Ninth Circuit issued an Order dismissing the appeal with prejudice pursuant to a stipulation of the parties.

On November 1, 2010, Plaintiffs filed both a Motion for Attorneys' Fees and Expenses and a Bill of Costs.  On November 8, 2010, CFV filed an Objection to the Bill of Costs.  On November 9, 2010, this Court issued a Findings and Recommendation Regarding Intervenor-Defendant Citizens for Fair Valuation's Objection to Plaintiffs HRPT Properties Trust, et al.'s Bill of Costs ("F&R").  Given Plaintiffs' subsequent withdrawal of their Bill of Costs on November 23, 2010, Chief Judge Mollway deemed the F&R moot.  Doc. No. 120.

## DISCUSSION

By way of this Motion, Plaintiffs, Hawaii's largest industrial landowner,[2] seek $1,512,949.92 in

---

[2]   Jacy Youn, HRPT Properties Trust, A Massachusetts-based real estate investment trust becomes one of Hawaii's largest industrial landowners, Hawaii Business, http://www.hawaiibusiness.com/ Hawaii-Business/August-2005/HRPT-Properties-Trust/ (last visited Dec. 21, 2010) ("'We've now got 18 million square feet of land in Hawaii, and that makes us one of, if not the largest, industrial landowners in the state of Hawaii,' says Adam Portnoy, executive vice president of HRPT."); Janice L. Magin, Federal Judge Rules Law Targeting HRPT's Hawaii Leases is Unconstitutional, Pacific Business News, http://www.bizjournals.com/pacific/stories/2010/05/31/ daily4.html (last visited Dec. 21, 2010).

attorneys' fees and expenses pursuant to 42 U.S.C.

§ 1988 against CFV, a nonprofit organization comprised

of a number of Plaintiffs' lessees.  Section 1988

provides, in pertinent part:  "In any action or

proceeding to enforce a provision of section[] . . .

1983 . . . the court, in its discretion, may allow the

prevailing party, other than the United States, a

reasonable attorney's fee as part of the costs."  42

U.S.C. § 1988(b).  To be considered a "prevailing

party," a party must "succeed on any significant issue

in litigation which achieves some of the benefit the

parties sought in bringing suit."  Farrar v. Hobby, 506

U.S. 103, 109 (1992) (quoting Hensley v. Eckerhart, 461

U.S. 424, 433 (1983)); LSO, Ltd. v. Stroh, 205 F.3d

1146, 1160 (9th Cir. 2000).

Prevailing plaintiffs "should ordinarily

recover an attorney's fee unless special circumstances

would render such an award unjust."  Mendez v. County

of San Bernardino, 540 F.3d 1109, 1124 (9th Cir. 2008)

(quoting Hensley, 461 U.S. at 429).  Fee awards are the

rule rather than the exception, and the Court's

discretion to deny fees under § 1988 is very narrow.

Id. at 1126 (citing Herrington v. County of Sonoma, 883

F.2d 739, 743 (9th Cir. 1989)).  This is because

"Congress' intent in enacting § 1988 was to attract

competent counsel to prosecute civil rights cases,

where 'victims ordinarily cannot afford to purchase

legal services at the rates set by the private

market.'"  Id. (quoting City of Riverside v. Rivera,

477 U.S. 561, 576 (1986) (plurality opinion)).

CFV does not dispute Plaintiffs' prevailing

party status.  Instead, CFV challenges Plaintiffs'

assertion that CFV is liable for fees, having acted

jointly with the State, and having participated in the

litigation as a non-innocent intervenor.  CFV submits

that fees and expenses should not be assessed against

it because 1) it is an innocent intervenor and 2) it

would be inequitable to allow Plaintiffs to recover

fees and expenses from CFV after they bargained away

their entitlement to recover fees and expenses from

Defendant Linda Lingle.

Section "1988 fee awards should be made against losing intervenors . . . 'only where the intervenors' action was frivolous, unreasonable, or without foundation.'"  Costco Wholesale Corp. v. Hoen, 538 F.3d 1128, 1133 (9th Cir. 2008) (quoting Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1288 (9th Cir. 2004) (quoting Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 761 (1989))).  For the reasons set forth below, the Court finds that CFV is not liable for attorneys' fees.

Plaintiffs argue that CFV is not an innocent intervenor because 1) its members would have played an essential role in the infliction of the constitutional injury; 2) it was indispensable in securing passage of the unconstitutional law; and 3) it conducted its extensive lobbying with blatant disregard for applicable legal requirements.  Plaintiffs note that because their tenants include some of the largest and most successful businesses in the State of Hawaii, an award of fees will not chill said tenants' ability to petition the Legislature or to otherwise exercise their

own constitutional rights.[3]

A.   CFV is an Innocent Intervenor

        Critical to the Court's inquiry into whether

CFV is an innocent intervenor is the definition of

"innocent."[4]  As noted by the Ninth Circuit in Costco

Wholesale Corp. v. Hoen, 538 F.3d 1128 (9th Cir. 2008),

the U.S. Supreme Court in Independent Federation of

Flight Attendants v. Zipes, 491 U.S. 754 (1989) "uses

the term 'innocent' to refer simply to an intervenor

who has not been found liable for engaging in unlawful

activity."  Costco, 538 F.3d at 1134; Sable Commc'ns of

_____

        [3]  This policy consideration provides no basis for
awarding fees against CFV.  It is disingenuous for
Plaintiffs to suggest that assessing over $1.5 million
in fees and expenses against CFV would not chill
Plaintiffs' tenants' ability to petition the
legislature or exercise their own constitutional
rights.  Indeed, if Plaintiffs' tenants faced potential
exposure to a fee award in excess of $1.5 million each
time they lobbied for legislation and then later
defended the constitutionality of the legislation as an
intervenor-defendant, their ability to petition the
legislature could be significantly impacted.

        [4]  While Plaintiffs accuse CFV of confusing the
standards applied to an innocent intervenor with the
definition of an innocent intervenor, it appears that
Plaintiffs have disregarded and/or misapplied the
definition of an innocent intervenor.

Cal. Inc. v. Pac. Tel. & Tel. Co., 890 F.2d 184, 194 n.20 (9th Cir. 1989) (innocent intervenors are those who have not been found to have violated another's civil rights).  In other words, a prior finding of liability for engaging in unlawful activity is a prerequisite to establishing that an intervenor is not innocent.  Costco, 538 F.3d at 1134 (Costco's argument "is at odds with *Zipes* because it suggests that an intervenor may be found blameworthy without any prior finding of liability for engagement in unlawful activity").  Plaintiffs have not and cannot point to a prior finding of liability against CFV for engaging in unlawful activity.[5]  Thus, their contention that CFV is non-innocent fails.

1. Future Infliction of Constitutional Injury by CFV's Members

Plaintiffs argue that CFV's members "**would have** played an essential role in the infliction of the

_____

[5] Plaintiffs assert a number of arguments, many of which are irrelevant, and none of which squarely address the lack of a finding of liability against CFV for unlawful activity.

10

constitutional injury," Mem. in Supp. of Mot. at 8
(emphasis added), not that CFV's members inflicted any
constitutional injury upon Plaintiffs.  Plaintiffs
suggest that the fact that Act 189 empowered CFV to
deprive Plaintiffs of their constitutional rights
elevates CFV to the level of a joint participant in the
unconstitutional action.  This argument is without
merit.  First, as discussed above, there must have been
a prior finding of liability against CFV for engagement
in an unlawful activity.  By raising the above
argument, Plaintiffs essentially concede that CFV has
not deprived them of any right.[6]  Insofar as CFV has
never been found liable for engagement in an unlawful
activity, and certainly not for the purported

------

[6]  Plaintiffs cite two cases from this district for
the proposition that a plaintiff is entitled to recover
its attorneys' fees if it sues for a declaratory
judgment or an injunction and prevents the occurrence
of a constitutional violation.  Runyon v. Fasi, 762 F.
Supp. 280 (D. Haw. 1991); Yuclan Int'l v. Arre, 504 F.
Supp. 1008 (D. Haw. 1980).  Neither involved the
propriety of awarding fees against an intervenor, a
fact that Plaintiffs have conveniently chosen to
ignore.  The limited issue before this Court is whether
CFV, as an **intervenor**, is liable for fees.

11

"empowerment" conferred upon it by Act 189, it is innocent for the purposes of determining fee liability. Costco, 538 F.3d at 1134 (finding the intervenor innocent for the purpose of determining fee liability under § 1988(b) because it was not found liable under § 1983 for adhering to the unconstitutional state law).

Second, that CFV would have benefitted from Act 189 (or been "empowered" by it, as claimed by Plaintiffs) in no way renders CFV a joint participant liable for attorneys' fees. According to Plaintiffs, it is "settled in the Ninth Circuit that a plaintiff's entitlement to attorney's fees in successful constitutional litigation includes an award of attorney's fees against intervenors who 'acted jointly with . . . state officials under a procedural scheme created by the state.'"[7]  Mem. in Supp. of Mot. at 5

---

[7]  Plaintiffs cite general principles of law dealing with awards of attorneys' fees in § 1988 cases, despite the inapplicability of these principles to awarding fees in the context of **intervenors**.  For example, Plaintiffs cite Council for Periodical Distributors Associations v. Evans, 827 F.2d 1483 (11th Cir. 1987) for the proposition that "[i]n cases where two or more defendants actively participated in a

12

(quoting <u>Sable Commc'ns</u>, 890 F.2d at 189[8]).  Plaintiffs incorrectly argue that this case is controlled by <u>Sable Communications of California Inc. v. Pacific Telephone and Telegraph Co.</u>  <u>Sable Communications</u> is distinguishable and Plaintiffs' reliance on it is misplaced.  General Telephone, the intervenor in <u>Sable Communications</u>, was found to have violated one of the plaintiff's first amendment rights in the same manner as one of the defendants.  <u>Sable Commc'ns</u>, 890 F.2d at 194 n.20.  Significantly, one of the legal issues presented in <u>Sable Communications</u> was whether the plaintiff established that one of the defendants, a private actor, "acted jointly with, or under compulsion from, state officials under a procedural scheme created by the state."  <u>Id.</u> at 189.  Whether or not General

_____

constitutional violation, it will frequently be appropriate to hold all defendants jointly and severally liable for the attorney's fees."  <u>Id.</u> at 1487.  However, <u>Evans</u> did not involve intervenors; it addressed the liability of named defendants with respect to attorneys' fees, and whether the apportionment of fees was proper based on a defendant's proportionate responsibility for the wrong.  <u>Id.</u>

[8]  In their memorandum, Plaintiffs incorrectly cite page 194.  The quoted passage is on page 189.

Telephone acted as a joint participant was not before the Ninth Circuit, as General Telephone's appeal was limited to the grant of attorneys' fees.  Id. at 187.

Here, the issue of joint participation was not presented to Chief Judge Mollway, nor adjudicated, and is therefore irrelevant to ascertaining the propriety of assessing attorneys' fees against CFV.[9]  Neither did Chief Judge Mollway find that CFV violated Plaintiffs' constitutional rights or acted unlawfully.  Plaintiffs are attempting to use this Motion as a means of

---

[9]  CFV submits that because Plaintiffs did not consider CFV a joint participant, having failed to name CFV as a party and in fact, having fought to keep CFV out of the litigation, they cannot now argue that CFV was a joint participation for the purposes of assessing attorneys' fees.  Opp'n at 6.  Plaintiffs characterize this argument as a red herring and counter that there is no requirement that an intervenor must be named as a defendant to be deemed a joint participant.  Reply at 5 n.2.  While not suggesting that naming a party as a defendant is a prerequisite to a finding of joint participation, the Court notes that Plaintiffs' current heavy reliance on the joint participation theory appears to be at odds with their strong opposition of CFV's motion to intervene, and their failure to name CFV as a defendant.  It would seem that if Plaintiffs genuinely believed that CFV was a joint participant, subject to liability, they would have named CFV as a defendant.

14

introducing new legal theories, favorable decisions on which might provide a basis for fees.  It is improper for them to do so, and this Court's decision with respect to Plaintiffs' entitlement to fees rests on the findings and conclusions in the SJ Order.[10]  Because Chief Judge Mollway did not deem CFV to be a joint participant, and has not found that CFV violated Plaintiffs' constitutional rights, CFV is an innocent intervenor and fees can only be assessed against it if the intervention was frivolous, unreasonable, or without foundation.

2.   CFV's Role in the Passage of Act 189

---

[10]   The Court rejects Plaintiffs' expansion of the SJ Order and misrepresentation of Chief Judge Mollway's holdings.  Plaintiffs represent that Chief Judge Mollway held and/or found as follows:  1) CFV fully participated in the constitutional violation, Reply at 16; 2) the enactment of the unconstitutional legislation improperly empowered CFV's members with state authority in negotiations with Plaintiffs for rent resets, id. at 5; and 3) under the constitutionally flawed legislation sponsored by CFV, CFV's members would play an essential role in using state authority in rent reset proceedings to unconstitutionally change the terms of Plaintiffs' historic lease contracts.  Id. at 4.  A careful review of the SJ Order reveals that Chief Judge Mollway made no such rulings.

15

As a second basis to support its contention that CFV is not an innocent intervenor, Plaintiffs assert that CFV initiated the legislation, lobbied, and testified extensively on its behalf.  A nearly identical argument was rejected by the Costco court. Costco, 538 F.3d at 1134.  Costco contended that the intervenor was not innocent because its lobbying led the Washington legislature to pass the unconstitutional law.  Id.  The court held that this argument was at odds with Zipes because an intervenor could be found blameworthy even in the absence of a prior finding of liability for engagement in an unlawful activity.  Id. Plaintiffs have disregarded this holding, relying instead on the secondary finding by the court that there was no evidence that the intervenor lobbied for the law.  There is no dispute here that CFV sponsored Act 189 and lobbied for its passage.  However, that alone does not strip CFV of innocent intervenor status. There must be a prior finding of liability against CFV for engagement in an unlawful activity, i.e., that its role in securing passage of Act 189 was unlawful.

16

Plaintiffs have cited no such finding, and no such finding exists.[11]

3. <u>CFV's Lobbying</u>

Finally, Plaintiffs proffer that CFV conducted its lobbying with blatant disregard for applicable legal requirements. The Court questions Plaintiffs' attempt to inject into this action a separate matter presently before the Hawaii State Ethics Commission, based on violations of state law. However, even considering this argument, the Court is unpersuaded. As with the previous two arguments, Plaintiffs are unable to point to a **<u>prior</u>** finding of liability for unlawful activity. Plaintiffs filed their complaint against CFV and Michael Steiner, CFV's executive director, for violations of Chapter 97, Hawaii Revised Statutes following the entry of judgment in this case. Reply, Decl. of Bruce D. Voss ("Voss Decl."), Ex. 1. A decision has yet to be made on the merits of the

---

[11] Chief Judge Mollway noted that CFV played an essential role in advocating for Act 189's passage, SJ Order at 43 n.4. However, she did not find that this advocacy was unlawful.

17

allegations.  Plaintiffs' conviction in their
allegations is not tantamount to finding of liability.
Thus, there is no prior finding of liability and CFV is
an innocent intervenor.

Plaintiffs propose that this Court may defer
ruling on this Motion until the Ethics Commission rules
on their complaint, or hold a factual hearing to
determine whether CFV violated applicable ethics laws.
The Court declines to do either.  Given the <u>Costco</u>
court's emphasis on the existence of a **<u>prior</u>** finding of
liability, the Court will not defer its ruling until
the Ethics Commission's decision is issued.
Plaintiffs, hopeful that they will succeed in their
ethics complaint, ask the Court to wait for a ruling
that has the potential to be favorable, and which they
would then rely upon for the argument that CFV is not
an innocent intervenor.  To allow Plaintiffs to wait
for a potential basis to support their currently
presented fee request is inappropriate.  As matters
stand, this Motion is being addressed well past the
time in which an attorneys' fees motion would

ordinarily be adjudicated, given the extension of time to file the Motion.  In fact, it is quite possible that had this Motion been filed within 14 days of the entry of judgment, the Court would have issued its findings and recommendation before the ethics complaint was ever filed.

Neither will the Court hold a factual hearing to determine whether CFV violated applicable ethics laws.  Whether or not CFV violated ethics laws is not properly before this Court, and the Court will not make any determinations concerning Plaintiffs' ethics allegations against CFV.

In sum, CFV is an innocent intervenor for the purpose of determining fee liability under § 1988. Consequently, the Court will now consider whether CFV's actions were frivolous, unreasonable, or without foundation.

B.  <u>CFV's Actions were not Frivolous, Unreasonable, or Without Foundation</u>

To determine whether CFV is liable for fees, the Court must ascertain whether CFV's manner of

litigating was frivolous, unreasonable, or without foundation. <u>Costco</u>, 538 F.3d at 1134-35; <u>Reed</u>, 388 F.3d at 1288 (considering the intervenor's conduct during litigation in determining whether its position was frivolous, unreasonable, or without foundation). In the present case, the Court finds that CFV's defense of Act 189 was not frivolous, unreasonable, or without foundation. The mere fact that Chief Judge Mollway rejected CFV's position and CFV unsuccessfully defended against Plaintiffs' motion for summary judgment and did not prevail on its counter-motion for summary judgment does not make CFV's defense of Act 189 frivolous, unreasonable, or without foundation. <u>Reed</u>, 388 F.3d at 1288; <u>cf.</u> <u>Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n</u>, 434 U.S. 412, 421-22 (1978) (discussing "frivolous, unreasonable, or without foundation" standard in the context of awarding fees in favor of a prevailing defendant and noting that the Supreme Court has cautioned that in applying this standard, "it is important that the district court resist the understandable temptation to engage in *post*

*hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation"). Significantly, Chief Judge Mollway made no finding that CFV's defense of this case was frivolous, unreasonable, or without foundation. Absent such a finding by Chief Judge Mollway, particularly in view of the fact that she adjudicated the merits of the action after full briefing, this Court finds that CFV is not liable for fees under § 1988(b) and declines to recommend an award of attorneys' fees to Plaintiffs.[12]

C.   Plaintiffs' Fee Request is Grossly Excessive and Unreasonable

Even assuming, *arguendo*, that the Court found that Plaintiffs were entitled to an award of attorneys' fees and expenses against CFV, the requested amount would be subject to substantial reductions. For a case that was litigated for a period of approximately 9 months, and in which the parties litigated 7 motions,

_____

[12]   It is unnecessary to discuss the parties' equity arguments because Plaintiffs are not entitled to attorneys' fees as a matter of law.

21

Plaintiffs claim to have incurred $1,447,424.21 in fees and $65,525.55 in expenses.  The following discussion highlights the more obvious deficiencies that would result in reductions, but is by no means exhaustive.

1.  Reductions to Hourly Rates

First, the grossly excessive and highly unreasonable hourly rates requested by Plaintiffs' mainland counsel would be reduced to match local rates, as the rates awarded by the Court are those of the forum district, not the district in which the mainland law firm is located.[13]  See Mendez, 540 F.3d at 1129 ("[T]he court must consider what constitutes a reasonable hourly rate for work performed in the

_____

[13]  To demonstrate the excessiveness of the requested hourly rates, the Court notes that Plaintiffs request an hourly rate of $400.40 for Frank Correll, who graduated from law school in 2008.  Mot., Decl. of Clifford Sloan ("Sloan Decl.") at ¶ 16, Ex. A.  In this district, based on previous awards, the Court would likely find reasonable an hourly rate ranging from $130.00-$160.00 for an attorney who has been licensed to practice since 2008.  Mr. Sloan's hourly rate ranges from $846.30-$930.00, and he has been licensed to practice law since 1986.  Id., Sloan Decl. at ¶ 5, Ex. A.  In this district, the Court would likely find reasonable an hourly rate ranging from $300.00-$350.00 for an attorney with his experience.

22

relevant community by attorneys of similar skill, experience and reputation."); Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002) (The reasonable hourly rate should reflect the prevailing market rates in the community); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").  There is no basis for deviating from this rule.  Though raising constitutional issues, this case was relatively straightforward, and did not require the involvement of a mainland law firm.  It is only in cases requiring the specialized knowledge of a mainland attorney or law firm that this Court might consider awarding an hourly rate commensurate with the rates in the mainland attorney/law firm's district/community. Although Plaintiffs tout their mainland counsel as "specialist[s] in complex constitutional litigation," Reply at 12-13, there are a number of very experienced and highly skilled local attorneys who could have effectively litigated this case.  Plaintiffs are

certainly entitled to counsel of their choice, and have the right to retain mainland counsel.  However, in this case, they are not entitled to reimbursement of mainland counsel's fees at mainland rates.

Plaintiffs' local counsel's hourly rates would also be reduced to rates commensurate with the prevailing rates awarded by the Court for attorneys and paralegals with similar experience and reputation.

2.   <u>Time Billed by Attorneys and Paralegals are Recoverable, but not that of Other "Professionals"</u>

Second, only the reasonable hours incurred by attorneys and paralegals would be compensable.  This Court does not compensate for the time expended by other professionals such as librarians, litigation specialists, litigation coordinators, or legal assistants, whose requested hourly rates exceed even the rates typically awarded to experienced attorneys in Hawaii.[14]  Plaintiffs erroneously argue that the time

---

[14]  For example, Plaintiffs request an hourly rate of $248.17 for Ms. Belofsky, a litigation coordinator with a college degree and who has undergone Skadden Arps' legal assistant training program.  Mot., Sloan

24

expended by their "professionals" should be awarded because it is customary in the Washington, D.C. legal community for such time to be billed to clients.  It is this district's practices that are relevant, not those that are customary in Washington, D.C.  Therefore, the billings for all professionals other than paralegals and attorneys would be non-compensable.

　　　3.　Reductions for Block-billed Time Entries

　　　　　Plaintiffs contend that block billing was appropriate and that no reductions based on this billing practice are warranted.  The Court is not persuaded.  This Court regularly reduces fee requests that include block-billed entries, and the Court has the discretion to do so.  Mendez, 540 F.3d at 1129 (It is fully appropriate for the Court to reduce hours billed in the block format.).  "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily

---

Decl. at ¶ 22, Ex. A.  An **attorney** with 20+ years experience would be awarded such an hourly fee in this district.

time spent working on a case, rather than itemizing the time expended on specific tasks." Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations and quotation marks omitted).  Block billing entries generally fail to specify a breakdown of the time spent on each task.

District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time counsel expended on specified tasks.  Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).  See also id. (citing Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")); see also Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims")).

26

Here, as noted by CFV, a significant number of time entries are billed in the block format. Plaintiffs' counsel's use of block billing makes it difficult, if not impossible, for the Court to ascertain the reasonableness of the hours expended with respect to specific time entries. Accordingly, it would be necessary to impose an across-the-board reduction of 15-25% with respect to the entries that are in the "block billing" format.

4. <u>Reductions for Excessive/Duplicate Billings</u>

Plaintiffs seek to recover fees for tasks, travel, and other activities for which multiple attorneys billed. Though the Court will not list specific instances here, the duplicative time spent by multiple attorneys is non-compensable. The general rule is that two professionals cannot bill for attending the same meeting. <u>Brandon E. v. Dep't of Educ., State of Hawaii</u>, No. CV 07-00536 ACK-LEK, 2008 WL 4602533, at *3 (D. Haw. Oct. 16, 2008). Thus, when a party's counsel meet with one other, the Court deducts the duplicative time billed. <u>Id.</u>; <u>In re</u>

Mullins, 84 F.3d 459, 467 (D.C. Cir. 1996) (deducting fees incurred by the two lowest-billing attorneys where three attorneys billed time spent attending a meeting together)).  Similarly, the attendance of hearings, conferences, and depositions by multiple attorneys is duplicative with respect to the attorney(s) who merely attend, and do not participate.  As a result, the Court would deduct the hours billed by attorneys who merely attended the foregoing.  See Sheffer v. Experian Info. Solutions, Inc., 290 F. Supp. 2d 538, 546 (E.D. Pa. 2003) (disallowing fees for mere attendance at deposition).

To the extent multiple attorneys or paralegals worked on any given task, the Court would carefully scrutinize the entries and deduct any duplicative and excessive time that resulted from the involvement of multiple individuals.

5.   Reductions for Ministerial/Clerical Work

A number of time entries reflect billing for clerical/ministerial work and are non-compensable. "[C]lerical or ministerial costs are part of an

28

attorney's overhead and are reflected in the charged hourly rate." <u>Jeremiah B. v. Dep't of Educ.</u>, Civil No. 09-00262 DAE-LEK, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (citing <u>Sheffer</u>, 290 F. Supp. 2d at 549). Tasks such as reviewing Court-generated notices, notifying clients of court hearings, filing documents with the Court, communication with court staff, scheduling, and corresponding regarding deadlines, are clerical and not compensable. <u>Id.</u> (finding that entries for communications about, and internal office management of, hearing dates and due dates are clerical in nature); <u>Nicholas M. ex rel. Laura M. v. Dep't of Educ., Hawaii</u>, Civ. No. 09-00162 HG-LEK, 2010 WL 234862, at *5 (D. Haw. Jan. 21, 2010) (finding that tasks such as informing a client that a document has been filed or informing client of a hearing date is clerical or ministerial); <u>Hawaii Carpenters Trust Funds v. Cosier Const., Inc.</u>, Civil No. CV 08-00442 SOM-LEK, 2009 WL 291188, at *3 (D. Haw. Feb. 03, 2009) (finding that review of district court filing notices are clerical and non-compensable); <u>Bandalan v. Castle &</u>

29

<u>Cooke Resorts, LLC</u>, Civil No. 07-00591 DAE-LEK, 2009 WL 1955328, at *5 (D. Haw. June 30, 2009) (clerical tasks include reviewing notices of the date and time for motions hearings and notices of filing deadlines); <u>Black</u>, 2010 WL 653026, at *12 (deeming clerical tasks such as traveling to court to check for form and filing complaint); <u>Young v. Geico Indem. Co.</u>, Civ. No. 08-00171 JMS/KSC, 2009 WL 3049640, at *8 (D. Haw. Sept. 23, 2009) (communications with the court are clerical and not compensable).  Most, if not all, of these tasks were completed by "professionals."  Given the Court's earlier determination that none of the hours expended by "professionals" other than paralegals or attorneys are compensable, further reductions for clerical tasks billed by these individuals would be unnecessary.

In sum, if the Court were calculating a fee award, it would, at minimum, impose the foregoing reductions.

D.   <u>Requested Expenses are Excessive</u>

Plaintiffs further seek to recover $65,525.55 in expenses.  CFV challenges Plaintiffs' entitlement to

30

the same.  Even if CFV were found liable for
Plaintiffs' fees and expenses, Plaintiffs' request for
expenses would be subject to reductions.


1.  <u>Electronic Research</u>

In awarding non-taxable costs, the Court
permits reimbursement for electronic research costs.
However, given Plaintiffs' failure to submit copies of
invoices and receipts to support their request, even
after CFV pointed out this deficiency, the Court would
recommend that the district court deny the request.
Local Rule 54.3(d)(3).

2.  <u>Travel Expenses</u>

Although travel expenses may be compensable
under § 1988, Plaintiffs' request for reimbursement of
first-class airfare and luxury hotel accommodations is
unreasonable.  Plaintiffs offer no sufficient
explanation for why first-class airfare and luxury
hotel accommodations were necessary and/or reasonable.
With respect to the airfare, Plaintiffs contend that
the class of airfare was necessary and reasonable for

31

lengthy cross country trips that exceeded 9 hours.
Absent proof of some illness, disability, or other
condition, discomfort alone is an insufficient basis
for the exorbitant request.  While first-class airfare
may be an expense Plaintiffs agreed to bear, this Court
will not find, as a matter of law, that first-class
airfare was reasonable or necessary, nor that it would
be recoverable from CFV if CFV were liable for expenses
under § 1988.  The same is true of Plaintiffs'
counsel's luxury hotel expenses.  <u>Topp, Inc. v. Uniden
America Corp.</u>, No. 05-21698-CIV 2007 WL 2155604, *4
(S.D. Fla. Jul. 25, 2007) ("The undersigned agrees that
Topp should not have to pay for first class airfare for
attorney Smith.  Therefore, the undersigned awards
Uniden $500.00 for attorney Smith's round trip coach
airfare between Atlanta and Phoenix, and disallows the
$1,118.85 first class premium as representing merely
the convenience of counsel."); <u>cf.</u> <u>Signature Flight
Support Corp. v. Landow Aviation Ltd. P'ship</u>, No.
1:08cv955 (JCC/TRJ), __ F. Supp. 2d. __, 2010 WL
3064021, *15 (E.D. Va. Jul. 30, 2010) (refuting

necessity and reasonableness of first class plane
tickets and stays at Hyatt for witnesses when cheaper
more reasonable options available, and deducting 50% of
the requested amount).

The Court additionally notes that the
reasonableness and/or necessity of mainland counsel's
travel to Honolulu, and local counsel's travel to
Boston is questionable and appears to be duplicative
and/or excessive.  Local counsel could have alone
appeared, and did in fact appear, on behalf of
Plaintiffs at the summary judgment hearings.  Likewise,
because mainland counsel traveled to Boston, it was
unnecessary for local counsel to do so.  Again, it is
one thing to charge a client for these expenses and
another to seek recovery from the losing party,
particularly where, as here, the request is
unreasonable and excessive.

For these reasons, even if CFV were liable for
Plaintiffs' expenses, the Court would disallow a
significant portion of the requested fees and expenses.

33

## CONCLUSION

In accordance with the foregoing, the Court HEREBY FINDS AND RECOMMENDS that Plaintiffs' Motion for Attorneys' Fees and Expenses, filed November 1, 2010, be DENIED.  The Court finds that CFV is not liable for attorneys' fees and expenses under § 1988(b) because it is an innocent intervenor and its manner of litigating this action was not frivolous, unreasonable, or without foundation.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, December 21, 2010.



_____
Kevin S.C. Chang
United States Magistrate Judge

CIVIL NO. 09-00375 SOM-KSC; HRPT PROPERTIES TRUST, et al. v. LINDA LINGLE; FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES